IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOTT L. HARTQUIST,                          )
                                             )
         Plaintiff,                       )
                                             )
    v.                                      )          1:11CV1067
                                             )
EMERSON ELECTRIC CO., THE                    )
EMERSON ELECTRIC MANUFACTURING               )
COMPANY, and EMERSON APPLIANCES &            )
TOOLS, INC.,                                 )
                                             )
         Defendants.                      )

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Defendants' Renewed Motion for Summary Judgment [Doc. #65]. This action has been referred to the undersigned to conduct all proceedings pursuant to 28 U.S.C. § 636(c) [Doc. #16].

    This case involves claims made by Plaintiff Scott L. Hartquist ("Plaintiff") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against his former employer, Emerson Electric Co., The Emerson Electric Manufacturing Company, and Emerson Appliances & Tools, Inc. (collectively, "Defendants" or "Emerson") as Plan Sponsor and Plan Administrator of a Long Term Disability Plan. Defendants have moved for summary judgment, contending that Plaintiff's ERISA claims are barred by the applicable statute of limitations, that Plaintiff's state common law claims are preempted by ERISA, and that an agreement signed by Plaintiff in 2004 settling his workers' compensation claim estops him from now asserting his present claims.

For the reasons that follow, the Court concludes that the 2004 workers' compensation agreement does not estop Plaintiff from asserting his present claims, that Plaintiff's state law claims are preempted by ERISA, and that Plaintiff's claims related to events in 2003 and 2004 are barred by the statute of limitations. However, issues remain with respect to Plaintiff's ERISA claim challenging the denial of his benefits on August 31, 2011. Therefore, Defendants' Renewed Motion for Summary Judgment will be granted in part and denied in part.

## I.    BACKGROUND

On or about June 13, 2003, while working at a Home Depot store on behalf of Defendants, several ladders fell and struck Plaintiff on the back of the head, allegedly causing severe injury and exacerbating certain pre-existing conditions. (Am. Compl. [Doc. #63] ¶ 5.) Plaintiff contends that this incident rendered him completely and permanently disabled and that the resulting disability caused him to resign from his employment with Defendants on December 9, 2003. (Id. ¶¶ 8, 13; Compl., Ex. E, G [Docs. #6-6, #6-8].)

At the time of his resignation, Plaintiff was entitled to apply for long-term disability insurance coverage under the UNUM Group Corporation ("UNUM") Group Plan that Defendants maintained for their employees (the "Plan"). (Compl., Ex. I, K [Docs. #6-9, 6-11]; Plan [Doc. #63-1]; Defs.' Mot. Sum. J., Ex. 2 [Doc. # 21-2].) Defendants served as the designated Plan Administrator and Plan Sponsor responsible for administering the Plan. (Am. Compl. [Doc. #63] ¶ 15; Answer to Am. Compl. [Doc. #64] ¶ 14). In his Complaint, Plaintiff contends that he was not aware that he was eligible for Plan benefits at the time of his resignation, and that Defendants did not notify him of his eligibility after his resignation. (Am.

2

Compl. [Doc. #63] ¶ 16; Compl., Ex. I, K [Docs. #6-9, 6-11]).  Following his injury and resignation, Plaintiff sought benefits under the North Carolina Workers' Compensation Act, and the Parties settled that claim by Agreement dated October 13, 2004, signed by Plaintiff on November 30, 2004.  (See Compl., Ex. F [Doc. #6-7].)

Six years later, in 2010, Plaintiff contacted Defendants requesting re-evaluation of his prior workers' compensation claim.  (Id., Ex. G [Doc. #6-8].)  That request was denied, but after receiving that denial in November 2010, Plaintiff contends that he discovered for the first time, via a benefits sheet in his records, that he was eligible for benefits under the Plan at the time of his resignation in December 2003.  (Id., Ex. I [Doc. #6-9].)  Plaintiff states that Defendants gave him the benefits sheet, along with voluminous other documents, when he began his employment with Defendants in January 2003, that he placed the two-page document in a personal employment file along with those other materials, and that he happened to be reviewing that employment file in November 2010 when he "randomly discovered the Benefits Sheet."  (Pl.'s Decl. [Doc. #28] ¶¶ 8, 10, 11, 15.)  On November 27, 2010, Plaintiff forwarded the discovered benefits sheet to Defendants and asserted his rights under the Plan.  (Compl., Ex. I [Doc. #6-9].)

Defendants reviewed Plaintiff's file and informed him by letter on January 20, 2011 that he was "not offered [long-term disability benefits] at the time of [his] resignation," and that he is "entitled to apply for [long term disability] benefits and may do so at this time."  (Id., Ex. K [Doc. #6-11].)  Plaintiff completed the necessary paperwork (id., Ex. M [Doc. #6-13]) and Defendants forwarded Plaintiff's application to UNUM for review (Defs.' Mot. Sum. J., Ex. 2 [Doc. #21-2]).  However, because "UNUM insurance policies contain a provision

3

requiring notification of a disability within one year of occurrence in order to be eligible for benefits," UNUM would not review Plaintiff's application. (Id.)

In light of UNUM's denial, Defendants retained GENEX Services, Inc. ("GENEX"), a medical review firm, to review Plaintiff's case as an independent consultant "before making any final determination on [Plaintiff's] request for benefits." (Id.) GENEX concluded that "[t]here is no evidence submitted that would indicate [Plaintiff] had impairments that would render him disabled as of [his resignation]." (Id., Ex. 3 [Doc. #21-3].) Defendants informed Plaintiff of this denial by way of letter dated August 31, 2011. (Id., Ex. 2 [Doc. #21-2].)

In November 2011, Plaintiff filed this action in North Carolina state court against Defendants asserting claims for: (1) Breach of Fiduciary Duty; (2) Breach of Contract; and (3) Negligence. (Compl. [Doc. #6].) Defendants removed this action to federal court on the basis of diversity of citizenship. (Notice of Removal [Doc. #1].) Defendants subsequently filed a Motion for Summary Judgment [Doc. #20] contending that Plaintiff's claims were barred both by the three-year statute of limitations applicable to contract actions in North Carolina and by virtue of a valid release previously entered into between Plaintiff and Defendants in connection with Plaintiff's prior workers' compensation claim. In Plaintiff's Response to that Motion, he suggested for the first time that some of his claims may arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (Pl.'s Br. [Doc. #27] at 5, 8). Defendants replied, noting that "[P]laintiff is not asserting any cause of action grounded in, referencing, or relying upon ERISA," but argued that even under ERISA, Plaintiff's claims would be barred by the statute of limitations. (Defs.' Br. [Doc. #53] at 4.)

After reviewing the Motion and the Parties' related submissions, the Court issued an Order [Doc. #57] directing the Parties to address whether the Plan for long-term disability insurance provided by Defendants was an ERISA plan and, if so, whether Plaintiff's state law claims either were preempted by ERISA or should be construed as claims under ERISA. The Court further ordered the Parties to address whether Plaintiff's first claim, if construed as an ERISA claim for breach of fiduciary duty by Defendants, would be barred by the statute of limitations found in 29 U.S.C. § 1113(1).

The Parties subsequently filed supplemental briefs on those issues [Docs. #58, 59]. In the supplemental briefing, Defendants contended that the Plan was an ERISA plan, that Plaintiff's state law claims were preempted by ERISA, and that if Plaintiff's first claim were construed as an ERISA claim for breach of fiduciary duty, it would be barred by the statute of limitations found in 29 U.S.C. § 1113(1). Plaintiff did not specifically address any of the questions raised by the Court, but rather argued only that because Defendants did not explicitly cite the statute of limitations in 29 U.S.C. § 1113(1) as an affirmative defense in their Answer (instead referring only to the "applicable statutes of limitation" generally), Defendants waived any ERISA statute of limitations defense.

The Court set this matter for a hearing on April 30, 2015 to clarify Plaintiff's claims and the respective positions of the parties. (See Text Order dated Mar. 27, 2015.) At the hearing, counsel for Plaintiff, when asked to clarify whether Plaintiff's claims were brought under ERISA or under state law, did not initially give a definite response, but eventually asserted that the claims, as pled, were brought under state law, but that the Plan likely fell under ERISA, and that Plaintiff would be proceeding under ERISA. However, the matter did

not appear completely settled, and counsel for Plaintiff noted that Plaintiff could make a definite determination on this issue if provided with a copy of the Plan itself. After hearing the Parties' arguments, the Court directed Defendants to provide Plaintiff with a copy of the Plan and directed Plaintiff, if he should intend to assert ERISA claims, to file an amended complaint setting out each claim and the basis for the claim. The Court likewise afforded Defendants an opportunity to file an amended answer.

Plaintiff subsequently filed an Amended Complaint [Doc. #63] noting that the Plan is an ERISA employee welfare plan as defined by 29 U.S.C. § 1002(1), and asserting claims for (1) Breach of Fiduciary Duties in violation of 29 U.S.C. §§ 1109 and 1132; (2) Breach of Contract in violation of 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(1)(B), and 1132(c); (3) Failure to Notify in violation of 29 U.S.C. § 1132(c); (4) Common Law Negligence; and (5) Common Law Breach of Fiduciary Duty. Plaintiff also attached a copy of the Plan [Doc. #63-1] to the Amended Complaint. Defendants filed an Amended Answer [Doc. #64] and the instant Renewed Motion for Summary Judgment [Doc. #65], in which they contend that Plaintiff's ERISA claims are barred by the applicable statute of limitations, that Plaintiff's state common law claims are preempted by ERISA, and that the workers' compensation settlement agreement signed by Plaintiff in 2004 estops him from now asserting his present claims.

## II.    STANDARD

A court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if the evidence

6

presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## III.  DISCUSSION

### A.  ERISA Preemption

Defendants contend that Plaintiff's claims for common law negligence and common law breach of fiduciary duty are subject to ERISA preemption. Under 29 U.S.C. § 1144, the provisions of ERISA "shall supersede any and all State laws insofar as they may now of hereafter relate to any employee benefit plan" under ERISA. 29 U.S.C. § 1144(a). "A state law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 377 (4th Cir. 2001) (internal quotation marks and citation omitted). Thus, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129-30 (1992) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990)).

7

In addition, "[t]he Supreme Court has determined that ERISA's civil enforcement provision, § 502(a) (29 U.S.C. § 1132(a)), completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502." Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 186-87 (4th Cir. 2002) (citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)). To the extent a party's state law claim is completely preempted, a court must convert it into a federal cause of action rather than dismiss it. See Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 292 (4th Cir. 2003) ("In dismissing the claims based simply on preemption, the district court failed to appreciate that the claims *completely* preempted were converted into federal claims that need to be decided as federal claims under § 502(a)." (emphasis in original)).

In this case, Plaintiff's common law claim for breach of fiduciary duty alleges that Emerson had a fiduciary duty as the entity "responsible for ensuring its employees received benefits to which they were entitled," and that Emerson breached its fiduciary duty to him by "failing to keep him apprised of his benefits, including the availability of disability benefits," and as a result "insured that [Plaintiff's] eventual application for benefits would be denied by UNUM as untimely." (Am. Compl. [Doc. #63] ¶¶ 58, 60, 62.) In his claim for common law negligence, Plaintiff contends that at the time he resigned on December 9, 2003, he was entitled "to receive long term disability benefits pursuant to the terms of the plan," that Emerson owed a duty to its employees, "including prospective and eligible Plan beneficiaries, to discharge [its] duties solely in the interest of the employee-participants and beneficiaries," including notifying eligible employees of the right to seek coverage under the Plan, and that

8

Emerson breached its duty by negligently failing to notify Plaintiff of his long-term disability benefits. (Id. ¶¶ 52-54.)

With regard to these claims, ERISA provides a cause of action for breach of fiduciary duty under § 1132(a)(3), see Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006) (citing Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996)), and, indeed, Plaintiff has asserted an ERISA claim for breach of fiduciary duty in his First Cause of Action, (Am. Compl. ¶¶ 33-39). See also Petty v. Carolina Biological Supply, No. 1:05CV00954, 2006 WL 2571047, at *4 (M.D.N.C. Sept. 5, 2006) ("Failure to provide an accurate [plan description] may be treated as a breach of fiduciary duty" under § 1132(a)(3)."). In addition, ERISA's civil enforcement provision provides a remedy when a plan administrator fails to comply with certain notice provisions, see 29 U.S.C. § 1132(a)(1)(A) and (c)(1), and Plaintiff asserts a claim for violation of those provisions in his Third Cause of Action. Thus, Plaintiff's First and Third Causes of Action assert ERISA claims that include the allegations contained in his common law breach of fiduciary duty and negligence claims.

To the extent that Defendants have moved for summary judgment on the state law claims on the basis of ERISA preemption, Plaintiff has not presented any Response on this issue, and does not provide any argument or basis for concluding that the state law claims are not preempted by ERISA. Having considered the state law claims, the Court concludes that Plaintiff's state law claims are clearly related to and preempted by ERISA. In addition, it appears that Plaintiff's claims for breach of fiduciary duty and negligence would fall within the scope of ERISA's civil enforcement provision, and must be construed as federal causes of action. However, as noted above, Plaintiff has already asserted the ERISA counterparts to his

state law claims in his First (Breach of Fiduciary Duty) and Third (Failure to Notify) Causes of Action, and, thus, conversion into a federal cause of action would be duplicative. Therefore, the Court will grant summary judgment in Defendants' favor as to Plaintiff's claims for common law breach of fiduciary duty and negligence, and the substance of the claims under ERISA will be considered as part of the First and Third Causes of Action.

B. Workers' Compensation Settlement Agreement

Defendants contend that Plaintiff should be equitably estopped from asserting the instant claims because Plaintiff's claims are "contrary to the Agreement of Final Settlement and Release signed in 2004[,]" which was a settlement of Plaintiff's workers' compensation claim. (See Defs.' Br. [Doc. #66] at 16-18.) It appears that Defendants object to Plaintiff claiming *partial* disability during the 2004 settlement while now claiming he was actually *totally* disabled at the time. (Id.)

> In North Carolina, the essential elements of estoppel are:
>
> (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; [and] (3) knowledge, actual or constructive, of the real facts.

Hawkins v. M & J Fin. Corp., 77 S.E.2d 669, 672 (N.C. 1953).

No evidence before the Court supports a finding that Plaintiff engaged in conduct which amounts to a false representation or concealment of material fact by signing the 2004 Settlement and Release. In the Settlement Agreement and Release, the Plaintiff and Defendants agreed that:

10

> [E]mployee contends he sustained a compensable injury arising out of and in the course of his employment, that the increased intensity of his tinnitus symptoms and the onset of headaches were caused by his alleged June 13, 2003 accident, that he resigned his employment as a result of his injuries, and that he is entitled to substantial benefits under the North Carolina Workers' Compensation Act, *including but not limited to* temporary total disability benefits and compensation for an anticipated future permanent partial impairment rating and medical expenses.

(Compl., Ex. F [Doc. #6-7] at 4 (emphasis added).) This provision of the Settlement Agreement indicates only that at the time of the Agreement, Plaintiff contended that he was entitled to workers' compensation benefits "including but not limited to" temporary total benefits and an anticipated, but not yet determined, permanent partial impairment rating. This representation is not inconsistent with a later claim that he should be considered disabled under the unrelated provisions of the long term disability plan. Moreover, even if there were some ambiguity on this point, no evidence suggests that Plaintiff made representations knowing them to be false at the time, or that he intended to mislead Defendants into believing that he was only partially disabled, rather than totally disabled, in order to induce them to sign the workers' compensation settlement agreement.

In considering the matter further, it appears that Defendants' contentions may be an attempt to assert the workers' compensation agreement as a release, arguing that Plaintiff is estopped from asserting claims for disability benefits because Defendants settled the workers' compensation claim in reliance on "plaintiff's agreement not to seek any future benefits." (Defs.' Br. [Doc. #66] at 18.) In this regard, Defendants contend that "Plaintiff's release of claims in 2004 was reasonably calculated to convey to [Defendants] that he was releasing all claims for 'partial' disability—whether temporary or permanent," and "Plaintiff expected Emerson to rely on the terms of the release in paying the settlement amount, and Emerson

11

did so." (Id.) However, the 2004 Settlement and Release appears to release only future claims under the North Carolina Workers' Compensation Act. (See Compl., Ex. F [Doc. #6-7] at 6 ("[I]t is agreed that no rights other than those arising under the [North Carolina Workers' Compensation Act] are compromised or released hereby.").) Defendants have not established that Plaintiff's prior actions were reasonably calculated to induce Defendants to believe he was releasing *all* future claims against them arising out of his injury. Indeed, Defendants have not presented any basis to conclude that a settlement of a workers' compensation claim precludes an employee from asserting a claim for disability benefits under an employee benefit plan, and Defendants conceded at the prior hearing in this case that those proceedings would not be mutually exclusive.[1] Accordingly, the Court cannot find that, as a matter of law, Plaintiff is estopped by the 2004 workers' compensation settlement from asserting his instant ERISA claims, to which the Court now turns.

C.     Statute of Limitations for ERISA Claims

Defendants have moved for summary judgment on Plaintiff's ERISA claims based on the statute of limitations. Defendants have not otherwise addressed the substance of the ERISA claims, and the Court therefore addresses here only the statute of limitations issues raised in the Motion for Summary Judgment. In considering the statute of limitations, the Court will first consider the Second Cause of Action, which is Plaintiff's ERISA claim for Breach of Contract for denial of his claim for benefits on August 31, 2011. The Court will

_____

[1] As discussed during the hearing, the factual information gathered in the workers' compensation proceedings could have been relevant to any determination of whether Plaintiff might have been able to qualify for benefits under the Plan, but the workers' compensation settlement would not have acted as a release of any long term disability claims and would not have precluded Plaintiff as a matter of law from even applying for benefits under the Plan.

then consider the Third Cause of Action, which is Plaintiff's ERISA claim for Failure to Notify based on the alleged failure to provide notice of his right to apply for disability benefits. Finally, the Court will consider the First Cause of Action, which is Plaintiff's ERISA claim for breach of fiduciary duty.

### 1.  ERISA Breach of Contract Claim

Plaintiff's ERISA Breach of Contract claim is based on Defendants' alleged denial of Plaintiff's claim for benefits on August 31, 2011.  (Am. Compl. [Doc. #63] ¶ 44.)  A plan beneficiary may bring a wrongful denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B).  In their Motion for Summary Judgment, Defendants argue that Plaintiff's Breach of Contract claim for denial of benefits is time-barred.  (Defs.' Br. [Doc. #66] at 13-15.)  ERISA does not provide a statute of limitations for claims other than breach of fiduciary duty, "so courts borrow the state law limitations period . . . which most closely resembles [the] ERISA claim." Christian v. Vought Aircraft Indus., Inc., No. 5:09-CV-186-FL, 2010 WL 4065482, at *9 (E.D.N.C. Oct. 15, 2010), aff'd, 439 F. App'x 272 (4th Cir. 2011).

As to the Breach of Contract claim, the Parties agree that North Carolina's three-year statute of limitations for breach of contract claims applies.  See N.C. Gen. Stat. § 1-52(1).  Although a court may borrow a state statute of limitations for a federal claim, federal law still governs the date of accrual.  See Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995).  Plaintiff contends that the cause of action accrues when the claim for benefits was denied, on August 31, 2011.  Defendants, however, appear to argue that the limitations period commenced in 2003 when Plaintiff was injured on the job.  (Defs.' Reply [Doc. #68] at 4-5.)  However, Defendants provide no basis for this contention in the context of ERISA claims.

13

Indeed, "[a] participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial." Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604 (2013). However, neither of the Parties has addressed the provision of the Plan setting out a limitations period and the commencement of that period under the Plan. (Plan [Doc. #63-1] at 14.) See also Heimeshoff, 134 S. Ct. at 610-16.[2] In addition, the Motion for Summary Judgment does not address whether Defendants can be held liable for a wrongful denial of benefits, or if UNUM, who Plaintiff has not sued, is the only proper defendant.[3] Moreover, if the matter is properly presented, the Court must review Defendants' decision to deny benefits under the proper standard for review, but that issue has not been addressed in the Motion for Summary Judgment.[4] Therefore, the Motion for Summary Judgment will be denied as to the ERISA Breach of Contract claim. Nevertheless, given that this ERISA claim

---

[2] Of course, the claim itself was determined by Unum to be untimely. As discussed during the hearing in this case, that underlying determination is subject to review under the appropriate ERISA standard of review, but that is separate from the question whether the § 1132(a)(1)(B) challenge to the 2011 denial is itself barred by the statute of limitations.

[3] Regarding the proper defendant to this claim, Defendants suggest in their reply brief that they are not the proper parties, arguing that "[n]o evidence supports the claim that Emerson promised, committed, or was duty-bound to pay plaintiff any disability benefits" and that "UNUM—not Emerson—was contractually obligated to make payments under the policy." (Defs.' Reply [Doc. #68] at 3-4.) However, that issue has not been fully presented, with an opportunity for Plaintiff to respond. In addition, there is some evidence that Defendants made the final decision to deny benefits in this case, and that matter has not been fully addressed. See also Martin v. PNC Fin. Servs. Grp., Inc., No. 5:11-CV-00138-RLV, 2012 WL 1802509, at *2 (W.D.N.C. May 17, 2012) (noting that "the Western and Middle Districts of North Carolina have held that a proper defendant in a cause of action for employee benefits under 29 U.S.C. § 1132(a)(1)(B) can be the benefit plan itself, the plan administrator, or a plan fiduciary").

[4] "To determine the proper standard of review under ERISA, the Court must first determine whether the Policy grants the plan administrator discretion to determine a claimant's eligibility for benefits. If the Policy does not grant discretion to the plan administrator, the Court will use a de novo standard of review. However, if the Policy grants discretion to the administrator, an abuse of discretion standard is applied." Harvey v. Astra Merck Inc. Long Term Disability Plan, 348 F. Supp. 2d 536, 540 (M.D.N.C. 2004) (citing Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir. 1999)).

would be for a bench trial, rather than a jury trial, and given the issues that remain, the Court will allow the parties to file cross motions for judgment on this claim, before determining whether there are matters remaining for resolution at a bench trial.[5]

### 2. Failure to Notify

With respect to the Third Cause of Action for Failure to Notify, Plaintiff brings this claim pursuant to 29 U.S.C. § 1132(c), based on Defendants' alleged failure to notify Plaintiff of his right to apply for disability benefits. (Am. Compl. [Doc. #63] ¶¶ 47-50.) Under § 1132(c), a plan beneficiary may hold a plan administrator liable for failing to comply with certain notice requirements. Plaintiff here specifically relies on the notice requirements of 29 U.S.C. § 1166. Plaintiff alleges that § 1166 required Defendants to notify him of his right to apply for disability benefits within fourteen days of his resignation. The Court notes, however, that § 1166 provides requirements related to continuation coverage for group health plans under COBRA, and it does not appear that § 1166 would apply in the present case in any event. Defendants do not specifically address this issue, but contend that Plaintiff's Failure to Notify claim is time-barred. (Defs.' Br.. [Doc. #66] at 13-15.)[6] The Court therefore considers the statute of limitations issue, regardless of whether Plaintiff's claim is raised under § 1166 or for failure to provide the requisite documents and information required by 29 U.S.C. §§ 1021-1030.

---

[5] Although Plaintiff has demanded a jury trial, (Am. Compl. [Doc. #63] at 13), this ERISA claim would be for a bench trial rather than a jury trial. See Phelps v. C.T. Enterprises, Inc., 394 F.3d 213, 222 (4th Cir. 2005); Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 (4th Cir. 1985).

[6] Because the parties have not addressed that issue, and because the statute of limitations would bar Plaintiff's claim for failure to provide notice in 2003 in any event, the Court need not address that matter further.

The Parties disagree as to the applicable statute of limitations. Again, because ERISA does not provide a limitations period for claims other than breach of fiduciary duty, the Court must borrow the state law limitations period which most closely resembles the ERISA claim. Plaintiff argues that the state law most analogous to an ERISA Failure to Notify claim is North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA" or "Act"), which provides a four-year statute of limitations. (Pl.'s Resp. [Doc. #67] at 11-12.) Defendants, on the other hand, contend that North Carolina's three-year limitations period for Breach of Contract claims is controlling. (Defs.' Reply [Doc. #68] at 6.) The Court, however, need not resolve this dispute, as Plaintiff's claim is time-barred even under a four-year limitations period.

Plaintiff argues that his Failure to Notify claim did not accrue until November 2010 when he discovered his right to benefits. (Pl.'s Resp. [Doc. #67] at 12.) In so arguing, Plaintiff applies the UDTPA provision stating that continuous violations of the UDTPA amount to separate offenses for each week they persist. (Id. at 11 (citing N.C. Gen. Stat. § 75-8).) Under Plaintiff's theory, each week that Defendants failed to notify Plaintiff of his rights under the Plan, a separate violation occurred such that the limitations period was renewed. (Id. at 11-12.) This contention, however, wrongfully relies on state law to determine the date of accrual of Plaintiff's ERISA claim. As noted previously, although a court may borrow a state statute of limitations for a federal claim, federal law still governs the date of accrual. See Nasim, 64 F.3d at 955. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. Federal common law recognizes a "continuing violation" theory which "applies to claims based upon a defendant's ongoing policy or pattern of [violations] rather than

16

discrete acts . . . ." <u>Hill v. Hampstead Lester Morton Court Partners LP</u>, 581 F. App'x 178, 181 (4th Cir. 2014). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." <u>Nat'l Advert. Co. v. City of Raleigh</u>, 947 F.2d 1158, 1168 (4th Cir. 1991) (internal quotation omitted). If the continuing violation doctrine is implicated, the limitations period begins to run at the time of the last violation. <u>See</u> <u>Brown v. Eagleton</u>, No. 8:13-CV-674 DCN, 2013 WL 6157984, at *5 (D.S.C. Nov. 21, 2013), <u>appeal dismissed,</u> 582 F. App'x 262 (4th Cir. 2014); <u>see also</u> <u>Reynolds v. Merrill Lynch Basic Long Term Disability Plan</u>, No. CIV. 15-00109 JMS, 2015 WL 3822319, at *3 (D. Haw. June 19, 2015) (noting that under the continuing violation theory, "the statute of limitations does not begin to run until the last breach occurs."). However, a failure to provide notice or provide information or documents as required is not treated as a continuing violation. <u>See</u> <u>Pierce v. Visteon Corp.</u>, No. 1:05-cv-1325-LJM-JMS, 2007 WL 2986123, at *3 (S.D. Ind. Oct. 9, 2007); <u>Reynolds</u>, 2015 WL 3822319, at *3-4 (finding the continuing violation theory inapplicable to a claim under § 1132(c)(1)); <u>Phillips v. Wythe Cty. Cmty. Hosp.</u>, No. 7:08CV10016, 2008 WL 5382288, at *5 n.7 (W.D. Va. Dec. 22, 2008) (suggesting that the continuing violation theory would not apply to a failure to notify claim under § 1132(c)). Accordingly, the Court finds that the continuing violation theory is inapplicable. Here, any alleged failure to provide information or notice occurred at the time of Plaintiff's resignation in December 2003. Moreover, the record indicates that Plaintiff was in possession of the benefits sheet from the date his employment commenced. (Pl.'s Decl. [Doc. #28] ¶¶ 8, 10.) Plaintiff acknowledges that his consultation of the benefits sheet in November 2010 put him on notice to inquire into his eligibility for long-term disability benefits. (<u>Id.</u> ¶ 16.) A reasonable employee in Plaintiff's

17

circumstances would have consulted the benefits sheet, inquired into the availability of disability benefits, and been aware of any corresponding failure to notify of such benefits at or near the time the employee resigned. Even assuming the four-year statute of limitations applies, Plaintiff would have had to file his Failure to Notify claim by December 2007. Plaintiff did not file this action until almost four years after that date — November 2011. Because this claim was untimely, the Court will grant summary judgment in favor of Defendant. [7]

### 3. Breach of Fiduciary Duty

Finally, the Court considers Plaintiff's Breach of Fiduciary Duty claim. (Am. Compl. [Doc. # 63] ¶ 38.) Plaintiff has asserted this claim pursuant to 29 U.S.C. §§ 1109 and 1132, but does not make clear under which subsection of § 1132 his Breach of Fiduciary Duty claim arises. Section 1109 provides for liability for breach of fiduciary duty, and § 1132(a)(2) permits a plan participant to bring a civil action for relief under § 1109. However, the Supreme Court has concluded that a breach of fiduciary duty claim under § 1132(a)(2) must seek remedies that would protect the entire plan, rather than an individual beneficiary. <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 140-42 (1985). In this case, Plaintiff seeks only individualized relief, and, thus, § 1109 is not the proper avenue for his claim. Defendants have not raised this issue, and construing Plaintiff's Amended Complaint liberally, the Court will presume that Plaintiff asserts this claim pursuant to § 1132(a)(3) which "authorizes some individualized

---

[7] The Court notes and dispenses with Plaintiff's argument that Defendants should be equitably estopped from asserting the statute of limitations as a defense to Plaintiff's Breach of Contract and Failure to Notify claims. (See Pl.'s Resp. [Doc. #67] at 4-7.) No evidence before the Court indicates that Defendants intentionally misled Plaintiff or misrepresented facts to induce him to take any particular action.

claims for breach of fiduciary duty . . . ."  Korotynska, 474 F.3d at 105 (citing Varity Corp., 516 U.S. at 512, 515).

Plaintiff proffers several bases for his Breach of Fiduciary Duty claim, including Defendants' alleged failure "to discharge its duties solely in the interest of beneficiaries" and "with the care, skill, prudence and diligence" required under § 1104, failure to provide an adequate Plan description, and material misrepresentation of facts regarding the Plan.  (Id. ¶ 37.)  The Breach of Fiduciary Duty claims are generally related to: (i) the alleged failure to provide notice or materials regarding the Plan, including failing to advise Plaintiff of his rights under the Plan or misrepresentation of the terms of the Plan and Plaintiff's rights under the Plan, and (ii) the denial and handling of his belated claim in 2011.[8]

In support of their Motion for Summary Judgment, Defendants argue that this claim is time barred (Defs.' Br. [Doc. #66] at 9-11), and that the benefits description provided to Plaintiff met all of the disclosure requirements under ERISA (id. at 11-13).

With respect to Defendants' statute of limitations argument, an ERISA claim for breach of fiduciary duty may not commence after the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach of violation . . . .

---

[8] The Court notes that in Korotynska, 474 F.3d at 105, the Fourth Circuit cited the Supreme Court in Varity, 516 U.S. at 507-15, for the proposition that § 1132(a)(3) does not authorize individual claims for breach of fiduciary duty where "plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." Thus, to the extent ERISA provides relief for a wrongful denial of benefits in § 1132(a)(1)(B), these claims are properly considered pursuant to that section rather than as claims for breach of fiduciary duty under § 1132(a)(3).

29 U.S.C. § 1113; see also Browning v. Tiger's Eye Benefits Consulting, 313 F. App'x 656, 660 (4th Cir. 2009) (noting that breach of fiduciary duty claims under ERISA are subject to 29 U.S.C. § 1113).

Plaintiff's Breach of Fiduciary Duty claim primarily centers on Defendant's failure to provide Plaintiff with the information necessary to timely apply for and receive benefits to which he was allegedly entitled under the Plan; namely, Defendants' "fail[ure] to provide a Summary Plan description containing sufficiently accurate and comprehensive information designed to reasonably apprise [Plaintiff] of his rights and obligations under the Plan," and "fail[ure] to provide [Plaintiff] a clear and plain statement of rights and obligations under the plan." (Am. Compl. [Doc. #63] ¶ 37d-e.) To the extent Plaintiff's claim is focused on these omissions, 29 U.S.C. § 1113(1)(B) requires that the claim must commence within six years after "the latest date on which the fiduciary could have cured the breach or violation . . . ."

Plaintiff, acknowledging that his claim is based on Defendants' omission, argues that the limitations period set out in § 1113(1)(B) did not begin to run until January 2011 when "Defendants invited [Plaintiff] to apply for long-term disability benefits . . . ." (Pl.'s Resp. [Doc. #67] at 15.) Plaintiff contends that this "indicated a willingness to cure the breach" and "admitted . . . an ability to remedy their omission and the breach of their fiduciary duty." (Id.)

> [P]laintiffs misconstrue the meaning of "cure" as used in ERISA. The Seventh Circuit has warned against readings of 29 U.S.C. § 1113(1)(B) which confuse two alternate meanings of the term "cure"—"cure" in the sense of "to fix" and "cure" in the sense of "to find a remedy." Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir.1998). The court noted that the second reading of "cure" would extend a fiduciary's liability indefinitely because it is always possible to remedy a breach. Id. Similarly, in Aull v. Cavalcade Pension Plan, the court rejected the plaintiff's argument that the defendant could still cure the breach and so the statute of limitations had not yet started running, stating that the argument "assumes a potentially unending liability on the part

20

of [defendants] that are alleged to have never cured a breach." 988 F. Supp. 1360, 1364 (D.Colo.1997).

Olivo v. Elky, 646 F. Supp. 2d 95, 102 (D.D.C. 2009) (citing Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir. 1998)). Thus, the Court must determine the latest date that Defendants could have fixed their alleged breach.

Here, in order to have truly cured the alleged breach, Defendants would have had to provide Plaintiff with sufficiently detailed Plan information early enough for him to have filed a timely claim. The Plan required a beneficiary to provide notification of a claim to UNUM "within one year of the covered occurrence in order to be eligible for benefits . . . ." (Am. Compl. [Doc. #63] ¶ 28; Defs.' Mot. Sum. J., Ex. 2 [Doc. # 21-2] at 1.) Thus, the latest date that Defendants could have cured their alleged breach by providing Plaintiff with the Plan information was on or about June 13, 2004 — one year after Plaintiff was injured. Any attempt by Defendants to cure the alleged breach after on or about June 13, 2004 would have been futile, as Plaintiff's claim for benefits would have been time-barred under the Plan's terms. Accordingly, the limitations period prescribed by § 1113(1)(B) began to run on or about June 13, 2004 and expired on or about June 13, 2010 — six years after the latest date on which Defendants could have cured their alleged breach. Plaintiff filed this action on November 2, 2011, more than a year after the limitations period had run. Therefore, the Court will grant summary judgment in favor of Defendant on Plaintiff's Breach of Fiduciary Duty claim to the extent it is based on failure to provide notice or materials regarding the Plan, including failing

to advise Plaintiff of his rights under the Plan or misrepresentation of the terms of the Plan and Plaintiff's rights under the Plan. [9]

However, to the extent the Breach of Fiduciary Duty claim is based on the denial and handling of his belated claim in 2011, additional issues remain for the same reasons discussed above with respect to the Breach of Contract claim. Defendants have not otherwise addressed the viability of this claim for alleged breaches of fiduciary duty in 2011, and issues remain for further consideration by the Court, but those contentions can be considered further in connection with the Breach of Contract claim, as set out above.

IV.     CONCLUSION

For the reasons set out above, Defendants' Renewed Motion for Summary Judgment will be granted in part and denied in part, and this case will proceed on Plaintiff's Breach of Contract claim and related Breach of Fiduciary Duty claim to the extent that these claims are based on the denial of Plaintiff's benefits claim in 2011. As noted above, issues remain with respect to those claims. Accordingly, given that this ERISA claim is for a bench trial rather than a jury trial, the Court will allow the Parties to file cross motions for judgment on these remaining ERISA claims, addressing any of the issues noted above or any other matters the Parties wish to raise. The motions for judgment must be filed by May 2, 2016, with responses and replies as provided in the local rules.

---

[9] Defendants further argue that there is no dispute that they complied with their ERISA fiduciary duties to provide a comprehensive explanation of the Plan. (Defs.' Br. [Doc. #66] at 11-13.) To the extent Plaintiff's Breach of Fiduciary Duty claim is premised upon Defendants' alleged material misrepresentations of the terms of the Plan (Am. Compl. [Doc. #63] ¶ 37f-g), there is no evidence before the Court which indicates that Defendants misrepresented Plaintiff's rights under the Plan. Accordingly, summary judgment is also proper as to this basis for Plaintiff's Breach of Fiduciary Duty claim.

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Summary Judgment [Doc. #65] is GRANTED IN PART and DENIED IN PART, and Plaintiff's Third, Fourth and Fifth Causes of Action are DISMISSED, and Plaintiff's First Cause of Action for breach of fiduciary duty is DISMISSED except to the extent that the cause of action is based on the denial of Plaintiffs' benefits claim in 2011. As such, the only claims remaining are Plaintiff's Second Cause of Action raising an ERISA claim for Breach of Contract based on the denial of his benefits claim on August 31, 2011, and the related Breach of Fiduciary Duty claim based on the review and denial of his claim in 2011.

IT IS FURTHER ORDERED that on or before May 2, 2016, the Parties may file cross motions for judgment as a matter of law as to the remaining claims, with responses and replies due as provided in the Local Rules.

This, the 31st day of March, 2016.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
