IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SCOTT L. HARTQUIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV1067 |
| | ) | |
| EMERSON ELECTRIC CO., THE | ) | |
| EMERSON ELECTRIC MANUFACTURING | ) | |
| COMPANY, and EMERSON APPLIANCES & | ) | |
| TOOLS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the parties' supplemental cross motions for summary judgment [Docs. #70 and #72]. This action has been referred to the undersigned to conduct all proceedings pursuant to 28 U.S.C. § 636(c) [Doc. #16]. For the reasons set forth below, the Court will grant Defendants' Supplemental Motion for Summary Judgment and deny Plaintiff's Supplemental Motion for Summary Judgment.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

This case involves claims made by Plaintiff Scott L. Hartquist ("Plaintiff") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against his former employer, Emerson Electric Co., The Emerson Electric Manufacturing Company, and Emerson Appliances & Tools, Inc. (collectively, "Defendants" or "Emerson") as Plan Sponsor and Plan Administrator of a Long Term Disability Plan.

On or about June 13, 2003, while working at a Home Depot store on behalf of Defendants, several ladders fell and struck Plaintiff on the back of the head, allegedly causing

severe injury and exacerbating certain pre-existing conditions. (Hartquist Aff. [Doc. #28] ¶¶ 2-3.) Plaintiff contends that this incident rendered him disabled and that the resulting disability caused him to resign from his employment with Defendants six months later, on December 9, 2003. (Id. ¶ 4; Compl., Ex. E, G [Docs. #6-6, #6-8].)

At the time of Plaintiff's resignation, Defendants maintained long-term disability insurance coverage for their employees under the UNUM Group Corporation ("UNUM") Group Plan (the "Plan"). (Compl., Ex. I, K [Docs. #6-9, 6-11]; Plan [Doc. #63-1]; Defs.' Mot. Sum. J., Ex. 2 [Doc. # 21-2].) Defendants served as the Plan Sponsor and Administrator. (Answer to Am. Compl. [Doc. #64] ¶ 14). Plaintiff had received a Benefits Sheet at the time he was hired in January 2003 that included a description of the Plan. (Pl.'s Decl. [Doc. #28] ¶ 8.) Plaintiff kept the Benefits Sheet, along with other job-related documentation, in his personal files. (Pl.'s Decl. [Doc. #28] ¶ 10.) However, Plaintiff asserts that at the time he resigned, Defendants did not specifically notify him of his potential eligibility under the Plan, and Plaintiff contends that he therefore assumed that he could not qualify for long term disability benefits. (Hartquist Aff. [Doc. #28] ¶ 14; see also Compl., Ex. I, K [Docs. #6-9, 6-11]).

Following his injury and resignation, Plaintiff sought benefits under the North Carolina Workers' Compensation Act, and the Parties settled that claim by Agreement dated October 13, 2004, signed by Plaintiff on November 30, 2004. (See Compl., Ex. F [Doc. #6-7].)

Six years later, in November 2010, Plaintiff contacted Defendants requesting re-evaluation of his prior workers' compensation claim. (Compl., Ex. G [Doc. #6-8].) That request was denied. Plaintiff contends that around that same time, in November 2010, he

2

happened to be reviewing his personal file of job-related documents and discovered the Benefits Sheet in his records. (Compl., Ex. I [Doc. #6-9]; Hartquist Aff. [Doc. #28] ¶¶ 15-16.) On November 27, 2010, Plaintiff sent a letter to Defendants asserting that he was eligible for benefits under the Plan at the time of his resignation in December 2003. (Compl., Ex. I [Doc. #6-9].)

Defendants reviewed Plaintiff's file and informed him by letter on January 20, 2011 that he was "not offered LTD at the time of [his] resignation," that he was "entitled to apply for LTD benefits and may do so at this time," and that the insurer "will make the final determination, not Emerson." (Compl., Ex. K [Doc. #6-11].) Plaintiff subsequently submitted his application for benefits, and included medical records and other materials he wanted considered. (Record, Part 1 [Doc. #71-1] at 28-45; Record, Part 2 [Doc. #71-2]; Record, Part 3 [Doc. #71-3] at 1-3.) Defendants then forwarded Plaintiff's application to UNUM for review.[1] (Defs.' Mot. Sum. J., Ex. 2 [Doc. #21-2]). However, Defendants subsequently informed Plaintiff that UNUM would not review his application because "UNUM insurance policies contain a provision requiring notification of a disability within one year of occurrence in order to be eligible for benefits." (Id.)

Despite UNUM's denial, Defendants subsequently retained GENEX Services, Inc. ("GENEX"), a medical review firm, to review Plaintiff's claim as an independent consultant "before making any final determination on [Plaintiff's] request for benefits." (Id.) GENEX

---

[1] Defendants initially forwarded Plaintiff's application to The Hartford for review. After realizing that UNUM was the insurer that provided disability benefits at the time Plaintiff resigned, Defendants forwarded his application to UNUM. (Defs.' Mot. Sum. J., Ex. 2 [Doc. #21-2].)

3

concluded that "[t]here is no evidence submitted that would indicate [Plaintiff] had impairments that would render him disabled as of 12/09/03." (Id., Ex. 3 [Doc. #21-3].) Defendants informed Plaintiff of this denial by way of letter dated August 31, 2011. (Id., Ex. 2 [Doc. #21-2].) In the same letter, Defendants stated, "[W]e have fulfilled our obligation to allow you to apply for Long Term Disability benefits. Your claim unfortunately has been denied." (Id. at 2.)

As a result of these events, Plaintiff filed suit and now asserts claims against Defendants for (1) Breach of Fiduciary Duties in violation of 29 U.S.C. §§ 1109 and 1132; (2) Breach of Contract in violation of 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(1)(B), and 1132(c); (3) Failure to Notify in violation of 29 U.S.C. § 1132(c); (4) Common Law Negligence; and (5) Common Law Breach of Fiduciary Duty. (Am. Compl. [Doc. #63].)

Defendants previously moved for summary judgment [Doc. #65], contending, *inter alia*, that Plaintiff's ERISA claims were barred by the applicable statute of limitations and that Plaintiff's state common law claims were preempted by ERISA. By Order dated March 31, 2016, the Court granted in part and denied in part the Motion. (Mar. 31, 2016 Order [Doc. #69].) Specifically, the Court found that ERISA preempted Plaintiff's state common law claims (id. at 7-10). See also Prince v. Sears Holdings Corp., 848 F.3d 173 (4th Cir. 2017) (confirming the scope of ERISA preemption). In addition, with respect to Plaintiff's ERISA claims under 29 U.S.C. § 1132(c) based on Defendants' alleged failure to provide notification regarding the Plan at the time of Plaintiff's resignation, the Court noted that Plaintiff was relying on 29 U.S.C. § 1166, which relates to COBRA and is inapplicable to the instant case. See also Austell v. Raymond James & Assoc., Inc., 120 F.3d 32, 34 (4th Cir. 1997) (affirming

4

district court's conclusion that COBRA does not require employee welfare benefit plan sponsors to offer continuation of coverage for disability insurance). The Court further concluded that Plaintiff's claims under 29 U.S.C. § 1132(c) were time-barred. (Mar. 31, 2016 Order at 15-18). With respect to Plaintiff's ERISA Breach of Fiduciary Duty claim (Count 1), the Court noted that Plaintiff did not appear to state a claim under 29 U.S.C. § 1109 and § 1132(a)(2) since Plaintiff was not seeking remedies to protect the Plan, and was instead seeking individual relief; that to the extent Plaintiff's claim was a claim for benefits, the claim could be considered as part of Plaintiff's claim under § 1132(a)(1)(B); and that to the extent the claim related to the time period prior to Plaintiff's resignation, it appeared barred by the applicable statute of limitations (id. at 18-22). However, the Court found that Plaintiff's ERISA Breach of Contract claim challenging the denial of benefits in 2011 and his related ERISA Breach of Fiduciary Duty claim were not time-barred. (Id. at 13-15, 22.) Noting that Plaintiff's remaining claims would be for a bench trial, the Court permitted the parties to file cross motions for summary judgment, which are now before the Court. (Id. at 14-15.)

In support of their instant Motion for Summary Judgment, Defendants contend that Plaintiff's Breach of Contract claim is untenable because: 1) Plaintiff failed to satisfy threshold eligibility requirements under the Plan; 2) UNUM employed a reasonable review process and did not abuse its discretion in denying Plaintiff's claim for benefits as untimely; 3) UNUM, as the only entity with authority to determine Plaintiff's eligibility, is a necessary party to this action who Plaintiff failed to join; and 4) Plaintiff failed to comply with the Plan's contractual limitation period for filing suit. (Defs.' Br. [Doc. #71] at 1-2, 9.) Further, Defendants argue

5

that Plaintiff cannot pursue a separate Breach of Fiduciary Duty claim since his claim is for denial of benefits. (Id. at 1.)

In support of Plaintiff's instant Motion for Summary Judgment, Plaintiff argues that his medical evidence establishes that he was totally disabled both in December of 2003 when he resigned from his job with Emerson and in August of 2011 when he submitted his claim for benefits. (Pl.'s Br. [Doc. #73] at 6-9.) Plaintiff contends that "with the plain language of the Plan providing for benefits in the case of total disability, Plaintiff is entitled to recover benefits due him under the Plan as a matter of law." (Id. at 9.)

II. STANDARD

A court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. "In considering cross motions for summary

6

judgment, a district court should 'rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.'" Adamson v. Columbia Gas Transmission, LLC, 987 F. Supp. 2d 700, 703 (E.D. Va. 2013) (quoting Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999)). Therefore, the Court will consider each party's Motions for Summary Judgment separately.

III. DISCUSSION

a. Defendants' Supplemental Motion for Summary Judgment

Plaintiff's ERISA Breach of Contract claim arises out of Defendants' alleged wrongful denial of Plaintiff's claim for benefits on August 31, 2011. (Am. Compl. [Doc. #63] ¶ 44.) Pursuant to 29 U.S.C. § 1132(a)(1)(B), a plan beneficiary may bring an action to recover benefits wrongfully denied. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108 (1989).

In support of their Motion for Summary Judgment, Defendants argue, as a threshold matter, that they are not proper parties to this action, and that Plaintiff failed to join the Plan itself as a necessary party. (Defs.' Br. [Doc. #71] at 16-19.) In a claim for wrongful denial of benefits, "the proper party defendant is the entity which holds the discretionary decision-making authority over the denial of ERISA benefits." Ankney v. Metro. Life Ins., 438 F. Supp. 2d 566, 574 (D. Md. 2006). Federal courts in North Carolina have consistently held that a plan beneficiary may assert a claim under § 1132(a)(1)(B) "against the [] plan itself as an entity and any fiduciaries who control the administration of the [] plan." McRae v. Rogosin Converters, Inc., 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004).

7

Here, Defendants contend that UNUM possessed sole discretionary authority to determine eligibility for benefits under the Plan, and that Defendants had no role in making the decision to deny Plaintiff's claim for benefits. (Defs.' Br. [Doc. #71] at 17.) In support of this position, Defendants point to the express terms of the Plan, which state, in relevant part, "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Plan [Doc. #63-1] at 12.) Further, Defendants point to their discovery responses in which they "confirmed . . . that [they] had no authority to evaluate Hartquist's LTD claim, and UNUM alone made the final benefits decision." (Defs.' Br. [Doc. #71] at 17.) Additionally, in the January 28, 2011 letter allowing Plaintiff to apply for benefits, Defendants informed Plaintiff that the "[insurer] will make the final determination, not Emerson." (Compl., Ex. K [Doc. #6-11].) Plaintiff contends that other evidence suggests that Defendants played a more direct role in the denial of Plaintiff's claim for benefits. Most notably, after UNUM initially denied Plaintiff's claim as untimely, Defendants informed Plaintiff that they would submit his claim to GENEX for review "before making any final determination on your request for benefits." (Defs.' Mot. Sum. J., Ex. 2 [Doc. #21-2].) However, Defendants contend that even if they voluntarily undertook further review beyond that required by the Plan, any recovery of benefits under the Plan would be against the Plan, not Defendants, and the Plan is still a necessary party.

Having considered the evidence presented, the Court concludes that Defendants raise legitimate concerns regarding Plaintiff's failure to include the Plan or UNUM as parties to the case with respect to Plaintiff's claim seeking to recover benefits under the Plan. However, the

8

Court need not address this issue further, because the Court concludes that even if Plaintiff could assert his § 1132(a)(1)(B) claim against Defendants without joining UNUM or the Plan, Defendants would still be entitled to summary judgment for the reasons set out below. See Cappuccio v. Pfizer, Inc., No. CIV.A. 2:07-CV-0549-LDD, 2007 WL 2593704, at *4 (E.D. Pa. Aug. 31, 2007) (noting that "the Court need not resolve the question of whether Pfizer is a proper party to the ERISA claim because regardless of to whom the claim is directed, Plaintiff is not entitled to severance benefits.") (footnote omitted).

Specifically, the Court concludes that Plaintiff has failed to present a genuine issue of material fact with respect to his claim challenging the decision to deny his application for benefits under the Plan. The decision to deny a claim for benefits is reviewed under a de novo standard of review unless the plan vests the administrator or fiduciary with discretionary authority to make benefit decisions, in which case the court reviews the denial under an abuse of discretion standard. See Firestone, 489 U.S. at 115; Woods v. Prudential Ins. Co. of Am., 528 F.3d 320, 322 (4th Cir. 2008). In this case, the Plan gave UNUM discretionary authority to make benefit determinations and to interpret the terms and provisions of the policy, which means the Court reviews only for abuse of discretion. Moreover, even if the more extensive de novo review is proper, there still can be no dispute that Plaintiff failed to satisfy the Plan's eligibility requirements. In reviewing Plaintiff's eligibility under the Plan, the Court "places great emphasis upon adherence to the written provisions in [the] employee benefit plan." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 56 (4th Cir. 1992), as amended (July 17, 1992). Here, the Plan states, in relevant part:

> Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Unum written proof of your claim

9

no later than 90 days after your elimination period. If it is not possible to give
proof within 90 days, it must be given no later than 1 year after the time proof
is otherwise required except in the absence of legal capacity.

(Plan [Doc. #63-1] at 7.) The Plan goes on to define the "elimination period" as ninety days of continual disability. (Id. at 16, 28.)

Plaintiff alleges a disability onset date of December 9, 2003. (See Pl.'s Br. [Doc. #73] at 7-8.) His "elimination period" under the Plan, therefore, ran from December 9, 2003 to March 8, 2004 (ninety days of continual disability). The Plan thus required Plaintiff to provide UNUM with written proof of his claim by June 7, 2004 (ninety days after his elimination period). If it was not possible to have provided proof of his claim by that time, the Plan allowed Plaintiff, at the very latest, to submit the required proof of claim by June 7, 2005 (one year after the time proof is otherwise required). Plaintiff does not dispute that he first applied for benefits under the Plan on June 22, 2011, more than six years after the latest conceivable date the Plan would have allowed him to submit proof of his claim. Thus, there is no genuine dispute of material fact that Plaintiff failed to timely comply with the Plan's proof of claim requirement. Thus, the determination by UNUM that Plaintiff's claim was untimely was correct, whether under a de novo review or an abuse of discretion review.

In his Response, Plaintiff contends that "Defendants should be estopped from asserting a timeliness defense" because Defendants invited Plaintiff to apply for benefits in 2011 and "also aided him in doing so." (Pl.'s Resp. [Doc. #74 at 2.) However, Plaintiff's time for presenting proof of claim under the Plan had passed six years earlier, and Defendants' actions in 2011 did not cause Plaintiff to miss the deadline. In addition, Plaintiff admits that he had information regarding the Plan in his possession from the time he was hired in 2003,

10

and he failed to "discover" that information until he was going through his own papers several years after his resignation. These undisputed facts indicate that Plaintiff failed to act with reasonable diligence, and Plaintiff has failed to present a sufficient basis for equitable relief from the Plan requirements. Moreover, in the correspondence that Defendants sent to Plaintiff in 2011, Defendants made clear that while Plaintiff could submit an application, any final determination would be made by UNUM. Plaintiff has failed to present any facts to support the conclusion that Defendants made a material misrepresentation to Plaintiff that would require the Court, in equity, to modify the terms of the ERISA Plan to extend deadlines that had long since passed.[2]

To the extent Plaintiff seeks judicial review of GENEX's independent determination that Plaintiff was not entitled to benefits when he resigned from Emerson, Plaintiff is not entitled to such review. Plaintiff's instant claim for wrongful denial of benefits is governed by the terms of the Plan, which did not obligate Defendants to submit Plaintiff's claim to an independent reviewer following the initial denial. That is, GENEX's independent review of Plaintiff's claim did not create additional grounds on which Plaintiff could challenge the denial of benefits under the Plan. Accordingly, any denial of Plaintiff's claim based on GENEX's determination does not provide Plaintiff with an alternative avenue for relief.

---

[2] In addition, the Court notes that under the terms of the Plan, Plaintiff was required to file suit "60 days after proof of claim has been given and up to 3 years from the time proof of claim is required." (Plan [Doc. #63-1] at 14.) Defendants contend that Plaintiff failed to meet this requirement because the proof of claim was required, at the latest, in June 2005, and three years from that date was June 2008. Plaintiff did not file suit until November 2, 2011, and thus failed to meet the filing deadlines provided in the Plan. See Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604 (2013).

11

Therefore, the Court will grant summary judgment in favor of Defendants on Plaintiff's ERISA claim for Breach of Contract.

The Court additionally notes that it previously left open the possibility that Plaintiff may have a viable Breach of Fiduciary Duty claim based on Defendants' handling of Plaintiff's claim for benefits. (Mar. 31, 2016 Order [Doc. #69] at 22.) In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to present any separate breach of fiduciary duty claim. Plaintiff did not respond to this argument in his Response. Defendants have pointed to an absence of a genuine issue of material fact on Plaintiff's Breach of Fiduciary Duty claim, and have thus "shift[ed] [the burden] to [Plaintiff] to come forward with facts sufficient to create a triable issue of fact." Temkin, 945 F.2d at 718-19 (citing Anderson, 477 U.S. at 247-48). By not responding to this argument, Plaintiff has failed to carry that burden, and summary judgment in favor of Defendants is therefore proper on Plaintiff's Breach of Fiduciary Duty claim. See Wimbush v. Donahoe, No. 1:09CV00358, 2012 WL 848036, at *10 (M.D.N.C. Mar. 13, 2012) (granting summary judgment in favor of the defendant as unopposed where the plaintiff did not address certain claims in response to the defendant's motion for summary judgment).

Based on the foregoing, the Court will grant Defendants' Supplemental Motion for Summary Judgment on all of Plaintiff's remaining claims.

 b. Plaintiff's Supplemental Motion for Summary Judgment

Plaintiff has moved for summary judgment on his ERISA Breach of Contract claim under 29 U.S.C. § 1132(a)(1)(B). Because the Court will grant judgment as a matter of law in

12

favor of Defendants on all of Plaintiff's remaining claims, as discussed above, the Court will deny Plaintiff's Supplemental Motion for Summary Judgment.[3]

IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Supplemental Motion for Summary Judgment [Doc. #72] is DENIED.

IT IS FURTHER ORDERED that Defendants' Supplemental Motion for Summary Judgment [Doc. #70] is GRANTED, and this action is DISMISSED with prejudice.

This, the 30th day of March, 2017.

                                                /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge

---

[3] The Court also notes that even if Plaintiff's claim were timely, and even if Plaintiff could establish that he was disabled at the time of his resignation in December 2003, other issues remain that would preclude an award of benefits as requested by Plaintiff. Indeed, it does not appear that Plaintiff would be entitled to any net recovery under the terms of the Plan. Specifically, the Court notes that Plaintiff seeks, as benefits under the Plan, 60% of his $30,000 per year salary, which would result in a monthly benefit of $1,500.00 per month beginning March 2004 after the 90-day elimination period. However, the Plan provides that after 24 months of disability payments, "if your monthly disability earnings exceed 60% of your indexed monthly earnings, Unum will stop sending you payments and your claim will end." (Plan [Doc. #63-1] at 18.) Plaintiff's Application reflects that he worked at Nationwide Insurance from January 2007 to April 2007, with total earnings of $15,500, reflecting average monthly earnings of $3,875.00. (Application [Doc. #71-1 at 32].) The Application also reflects work at Signature Garage Interiors from February 2008 to November 2008, with total earnings of $15,200, reflecting average monthly earnings of $1,520.00. (Id.) Either of these periods of employment would have triggered the Plan provisions ending the claim. Thus, even if Plaintiff's claim had been allowed, he would have been entitled, at most, to $1,500.00 per month from March 2004 to December 2006 (34 months), reflecting a total of $51,000.00. However, the Plan also provides for deduction of any amounts awarded as Worker's Compensation. In this case, Plaintiff was awarded $60,000.00 in Worker's Compensation, which exceeds any amounts he would have been entitled to under the Plan. The Court includes this note not as part of the findings on summary judgment, but simply to reflect the multiple remaining issues even if the time bar and procedural hurdles were removed and even if Plaintiff could establish that he was disabled in December 2003.

13